# United States District Court

## SOUTHERN DISTRICT OF INDIANA

**UNITED STATES OF AMERICA**

V.

MHD MAJID AL HELWANI

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:17-mj-1133

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about December 21, 2017, in Marion County, in the Southern District of Indiana, defendant did, commit:

being an alien, admitted to the United States under a nonimmigration visa, knowingly possess in commerce and affecting commerce, a firearm, to wit: a SAA Inc, Modern Sport Rifle SA15 Rifle Serial Number JT24621, in violation of Title 18 U.S.C. §922(g)(5)(B)

I further state that I am a special agent, and that this complaint is based on the following facts:

See attached Affidavit

**Continued on the attached sheet and made a part hereof.**

_____
Special Agent, G. Scott Thompson, HSI

**Sworn to before me, and subscribed in my presence**

December 21, 2017                    at    Indianapolis, Indiana
**Date**

Tim A. Baker, U.S. Magistrate Judge        _____
**Name and Title of Judicial Officer**              **Signature of Judicial Officer**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, G. Scott Thompson, U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I am employed as a Special Agent of HSI, DHS in Indianapolis, Indiana, and have been employed in that capacity for approximately 14 years. I am empowered by law to investigate and to make arrests for offenses against the United States to include offenses involving the violation of immigration laws. Prior to my service with HSI, I was employed by the United States Immigration and Naturalization Service (INS) for approximately four and one-half years as a Special Agent.

3. I have conducted and participated in numerous investigations violations of federal firearm and Immigration laws and have focused attention on the detection and apprehension of individuals violating both federal and state laws.

4. The facts in this affidavit come from my personal observations, my training and experience, and from information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant, and does not set forth all of my knowledge about this matter.

5. I make this affidavit in support of a criminal complaint. This complaint charges that Mhd Majid AL HELWANI, who, beginning an alien – admitted to the United States under a nonimmigrant visa -did knowingly possess in commerce and affecting commerce, a firearm, specifically, a SAA Inc, Modern Sport Rifle SA15 Rifle, Serial Number JT24621.

## INVESTIGATIVE SUMMARY

6. On December 13, 2017, Indianapolis Metropolitan Police Department contacted FBI Special Agent Matt Vandevender, a member of the FBI-Indianapolis Joint Terrorism Task Force (JTTF), regarding an alien who had been admitted in the United States under a nonimmigrant visa, Mhd Majid AL HELWANI.

7. On December 18, 2017, United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI) Special Agent Matthew Hall, utilizing law enforcement databases, discovered that AL HELWANI is a Syrian national. Moreover, Special Agent Hall discovered that on or about August 13, 2014, AL HELWANI was denied a visa to enter the United States. On or about August 27, 2014, however, AL HELWANI applied again and was granted a B1/B2 nonimmigrant visa, which allowed AL HELWANI admission into the United States.

8. On or about September 12, 2014, AL HELWANI was admitted into the United States under the B1/B2 nonimmigrant alien visa through John F. Kennedy airport located in New York, New York. Upon arrival in the United States, AL HELWANI reported to United States Customs and Border Protection officials stating that he was visiting the United States to research colleges, and that he would be residing in Chicago, Illinois during his stay. AL HELWANI was scheduled to depart the United States on October 7, 2014.

9. From the investigation, your affiant learned that AL HELWANI purchased a return flight with a scheduled departure from the United States on October 7, 2014. AL HELWANI did not, however, utilize that ticket. Instead, a few months later, on or about, February 11, 2015, AL HELWANI filed for an I-821, Application for Temporary Protected Status (TPS). When granted a TPS, an alien is not considered to be permanently residing in the United States under color of law or eligible for public assistance by a State. The alien is, however, permitted to travel abroad with the prior consent of the Attorney General. Also, an alien under a TPS is considered to be in lawful status in the United States and maintains this status as a nonimmigrant.

10. AL HELWANI's immigration status does not allow him to possess a firearm.

11. In furtherance of the investigation, members of the FBI-Indianapolis JTTF interviewed Rick Bales regarding AL HELWANI.

12. In November 2017, Bales' security company received a work order from Moni Smart Security to service an existing security system located in a residence at XXXX Garth Drive, Indianapolis, Indiana. AL HELWANI's contact information was provided on the work order from Moni Smart Security.

13. In or around November 2017, Bales traveled to AL HELWANI's residence at XXXX Garth Drive, Indianapolis, Indiana to service the security system. Bales was granted entry into the house by AL HELWANI. While inside the residence, Bales activated the security system and replaced the systems' batteries. The security system controlled cameras stationed on the four corners of the house. Before leaving the residence, Bales was questioned by AL HELWANI concerning the ability of AL HELWANI to monitor his residence remotely. While completing the service call, Bales noticed that the house was sparsely furnished, and questioned the need for wanting to remotely monitor the residence.

14. On December 12, 2017, Bales had to return to AL HELWANI's residence due to a malfunction with the security system. Bales told AL HELWANI that the system would work better if it had wireless connectivity. AL HELWANI was adamant that he did not want wireless devices. AL HELWANI asked if he could view his cameras remotely and Bales told him it would work with a wireless system. AL HELWANI again stated he was against having a wireless system. Bales noticed that AL HELWANI had a DVR with a screen, split 4 ways, linked to the security system. According to Bales, AL HELWANI seemed paranoid and followed Bales closely throughout the house.

15. According to Bales, AL HELWANI residence appeared to not have been lived in. The three-bedroom residence was furnished with only a couple of chairs in the living room and a mattress on the floor in the master bedroom.

16. During the service call, AL HELWANI asked Bales if he knew anything about AR-15 rifles. Bales stated he knew about AR-15 rifles and had shot them previously. During the conversation about the rifle, AL HELWANI told Bales he was having issues with the trigger of the firearm and wanted to know how to repair it. AL HELWANI stated he had shot the weapon previously but was having an issue with a spring in the trigger assembly. Bales advised AL HELWANI that he could not fix AL HELWANI's rifle, but suggested that AL HELWANI take it to a local gun shop. AL HELWANI asked Bales for the information for the gun shop and Bales stated that he would get the information to AL HELWANI.

17. On December 14, 2017, Bales returned to AL HELWANI's residence to continue working on the security system. The security system's alarm panel was located in the master bedroom closet. When Bales entered the master bedroom, he observed that the mattress looked like it had be slept in and there was a MacBook laptop in the room. Bales entered the master bedroom closet and observed a black nylon rifle bag leaning against the wall in the closet. Bales had to move the bag to gain access to the alarm panel. The bag was approximately 3 to 4 feet long. Due to the weight of the bag, Bales believed it contained a rifle. Bales, being an avid hunter and firearms user, knows from personal experience the weight and feel of a rifle in a case.

18. While Bales was working on the security system, AL HELWANI brought up getting the rifle repaired. Bales told investigators AL HELWANI seemed like he wanted to get the rifle repaired quickly and kept requesting the information on if Bales knew anyone who could fix it. Bales provided him the information of a gun repairer via text message.

19. According to Bales, his interaction with AL HELWANI was not typical of his normal clientele. First, Bales noticed that the residence was sparsely furnished. When Bales returned to the residence, AL HELWANI had two more mattresses on the floor in the remaining two bedrooms of the three-bedroom residence. Next, Bales failed to understand why AL HELWANI wanted to remotely monitor cameras on a house that contained very little. Lastly, Bales found it odd that AL HELWANI asked him if he knew how to repair AR-15 rifles and that AL HELWANI seemed paranoid during their time together.

20. During his meetings with law enforcement, Bales was able to positively identify a picture presented to him by investigators as AL HELWANI.

21. On December 19, 2017, the Honorable U.S. Magistrate Judge Debra McVicker Lynch of the Southern District of Indiana authorized a search warrant for AL HELWANI's residence located at XXXX Garth Drive Indianapolis, Indiana.

22. On December 21, 2017, investigators executed the search warrant at AL HELWANI's residence located at XXXX Garth Drive Indianapolis, Indiana. At or around 6:00am, law enforcement approached the residence and knocked on the door. AL HELWANI answered the door with a loaded Taurus Model 709 Slim 9mm, Serial Number TJ18139 in his hand.

23. After taking control of the weapon, AL HELWANI was secured by agents. AL HELWANI provided the agent with a State of Indiana License to Carry a Handgun. Relying on

Indiana State Police handgun licenses registration and records, law enforcement has determined that the State of Indiana license was issued based on false information provided by AL HELWANI. On the licensing registration forms, AL HELWANI represented that he was born in Indiana.

24. In addition, while executing the search warrant of the residence, law enforcement discovered a Sabal Arms SA15 Rifle Serial Number JT24621 in a black nylon rifle bag in the closet of the master bedroom. Agent also recovered one high capacity magazine in the bag.

## CONCLUSION

25. Based on the above paragraphs, I respectfully submit that there is probable cause to believe that Mhd Majid AL HELWANI, being an alien, admitted to the United States under a nonimmigration visa, knowingly possessed in commerce and affecting commerce, a firearm, to wit: a SAA Inc, Modern Sport Rifle SA15 Rifle Serial Number JT24621, in violation of Title 18 U.S.C. §922(g)(5)(B).

FURTHER AFFIANT SAYETH NOT.

_____
G. Scott Thompson
Special Agent
ICE/Homeland Security Investigations

Subscribed and Sworn to before me this 21st day of December, 2017.

_____
U.S. Magistrate Judge